UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

MICHAEL DARSCH,
          Plaintiff,

    v.                                              CIVIL ACTION NO. 15-13466-WGY

SCOTT LYNCH, ET AL.,
          Defendants.

MEMORANDUM AND ORDER

YOUNG, U.S.D.J.

BACKGROUND

On September 29, 2015, plaintiff Michael Darsch ("Darsch"), a prisoner in custody at MCI Concord in Concord, Massachusetts, filed a self-prepared Complaint against a number of defendants connected in various ways to his criminal prosecution, conviction, and/or sentence in the Hampden County Superior Court. Specifically, the defendants include: (1) Scott Lynch ("Lynch"), the lead detective and investigator for the Chicopee Police Department ("CPD"); (2) John Pronovost ("Pronovost"), a supervising police officer with the CPD; (3) Tracey Duncan ("Duncan"), Darsch's criminal defense attorney appointed by the state court; (4) Matthew Green, ("Green") the prosecuting attorney for the Hampden County District Attorney's Office ("HCDAO"); (5) the HCDAO; and (6) the CPD. In the caption of the Complaint, Darsch also indicates there are additional defendants (by using "et al."); however, there are no allegations against any other individuals or entities within the body of the Complaint. Darsch asserts due process and equal protection violations pursuant to 42 U.S.C. §§ 1983 and 1985 and criminal statutes 18 U.S.C. §§ 241 and 242 (Conspiracy against rights; Deprivation of rights under color of law). He also asserts claims under the Massachusetts Civil Rights Act ("MCRA"), Mass.

Gen. Laws ch. 12, §11I, Mass. Gen. Laws ch. 263, § 1A, and legal malpractice.

In brief, Darsch claims that in November, 2010, he was interviewed by Lynch and given his Miranda rights. He claims he was not informed of the reason why he was being questioned nor was he advised that he could stop the interview at any time. After Darsch stated he wanted a lawyer, the interview ended and he was escorted out of the police station. He was not arrested or brought before a Clerk-Magistrate for arraignment; rather, he later was summonsed into court and told he had been indicted pursuant to Mass. Gen. Laws ch. 265, § 23 (Rape and abuse of child). Darsch further contends that defendants Lynch and Pronovost submitted a false incident report that indicated that he had been arrested (the report stated the matter was "closed by arrest."). Compl. (Docket No. 1 at 7. ¶ 12) . He asserts that this violated Mass. Gen. Laws ch. 263, § 1A.[1] He also asserts claims against the CPD for the actions of these two employees.

Next, with respect to defense attorney Duncan, Darsch alleges that she provided inadequate representation by failing to investigate other witnesses who would support Darsch's claim of innocence. He also claims she failed to use an expert witness and failed to point out that the testimony of a witness was inaccurate and contrary to the police investigation reports. He alleges that Duncan committed legal malpractice.

---

[1]Section 1A of Chapter 263 provides:

> Whoever is arrested by virtue of process, or is taken into custody by an officer, and charged with the commission of a felony shall be fingerprinted, according to the system of the bureau of investigation and intelligence in the department of state police, and may be photographed. Two copies of such fingerprints and photographs shall be forwarded within a reasonable time to the colonel of state police by the person in charge of the police department taking such fingerprints and photographs.

Mass. Gen. Laws ch. 263, § 1A.

With respect to prosecutor Green, Darsch alleges that he maliciously and willfully violated his equal protection rights at sentencing because he recommended a sentence that was far greater than the statute required for a defendant with no criminal record. Darsch further contends that other similarly situated defendants received lesser prison sentence recommendations than he did. Additionally, Darsch claims that Green was aware that he had never formally been arrested and booked as required under Mass. Gen. Laws ch. 263, § 1A. He also contends that Green is not entitled to immunity where he overstepped constitutional boundaries. Darsch sues the HCDAO for the actions of its employee.

As relief, Darsch seeks, *inter alia*, a declaratory judgment that the criminal process was void and therefore dismissal of his criminal conviction is required. He also sees $4 million in monetary damages and $25,000.00 in punitive damages, as well as an Order prohibiting the defendants from retaliating against him.

Along with the Complaint, Darsch filed a Motion for Leave to Proceed *in forma pauperis* (Docket No. 2). On December 10, 2015, Darsch filed a Motion to Appoint Counsel (Docket No. 5) with supporting materials.

## DISCUSSION

I.    The Motion for Leave to Proceed *In Forma Pauperis*

Upon review of Darsch's financial affidavit and prison account statement, this Court finds that he lacks funds to pay the $400.00 filing and administrative fees for this action. Nevertheless, because he is a prisoner, he is obligated to pay the filing fee in installments pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. § 1915 (the *in forma pauperis* statute).

Accordingly, Darsch's Motion for Leave to Proceed *in forma pauperis* (Docket No. 2 ) is ALLOWED, and he is Ordered to pay the filing fee as follows.

>   A.   Darsch is assessed an initial partial filing fee of $23.50, pursuant to 28 U.S.C. § 1915(b)(1)(A);[2] and
>
>   B.   The remainder of the fee $326.50 is to be assessed and collected in accordance with 28 U.S.C. § 1915(b)(2).

The Clerk shall send the Treasurer's Office at MCI Concord a copy of this Memorandum and Order to facilitate payments to this Court.

II.   Screening of the Complaint

Because Darsch is a prisoner as defined by 28 U.S.C. § 1915(h), the screening provisions of the PLRA come into play. The PLRA contains several provisions which grant this Court the authority to screen and dismiss prisoner complaints. See 28 U.S.C. § 1915 (proceedings *in forma pauperis)*; 28 U.S.C. § 1915A (screening of suits against governmental officers and entities). Section 1915 authorizes federal courts to dismiss actions in which a plaintiff seeks to proceed without prepayment of fees if the action lacks an arguable basis either in law or in fact, Neitzke v. Williams, 490 U.S. 319, 325 (1989), or if the action fails to state a claim on which relief may be granted or seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2)(B)(ii) and (iii). Section 1915A also authorizes the Court to review prisoner complaints in civil actions in which a prisoner seeks redress from a governmental entity, or officers or employees of a governmental entity, and to dismiss the action regardless of whether or

---

[2] The initial partial assessment represents a manual calculation of 20% of the average monthly deposits in Darsch's prison account as reflected in the statement submitted for the period April 2, 2015 through September 17, 2015. The initial partial assessment is made regardless of whether or not Darsch currently has funds in his prison account to pay. The *in forma pauperis* statute requires the initial partial filing fee be assessed, but collection to occur "when funds exist." 28 U.S.C. § 1915(b)(1). See Bruce v. Samuels, Jr., --- S.Ct. --- 2016 WL 112684, *1 (Jan. 12, 2016) (holding the PLRA calls for simultaneous and not sequential collection of multiple monthly installment payments; however "[t]he initial payment may not be exacted if the prisoner has no means to pay it, §1915(b)(4), and no monthly installments are required unless the prisoner has more than $10 in his account, §1915(b)(2).")).

not the plaintiff has paid the filing fee, if the complaint lacks an arguable basis in law or fact, fails to state a claim, or seeks relief from a defendant immune from such relief.  28 U.S.C. § 1915A.

In connection with this preliminary screening, Darsch's *pro se* Complaint is construed generously.  Hughes v. Rowe, 449 U.S. 5, 9 (1980);  Haines v. Kerner, 404 U.S. 519, 520 (1972); Instituto de Educacion Universal Corp. v. U.S. Dept. of Education, 209 F.3d 18, 23 (1st Cir. 2000).  Even under a broad reading, however, the Complaint is substantially deficient and is subject to dismissal for the reasons set forth below.

III.     Failure to Plead Plausible Federal Claims Pursuant to Fed. R. Civ. P. 8

Darsch's Complaint fails to comport with the pleading requirements of Rule 8 of the Federal Rules of Civil Procedure with respect to his conspiracy claims, his claims against his defense counsel, and his claims under 42 U.S.C. §§ 1983 and 1985.

Under Rule 8(a), a plaintiff is required to include in the complaint, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This statement must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests,'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (alteration in original) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957));  see Rivera v. Rhode Island, 402 F.3d 27, 33 (1st Cir. 2005).  It must afford the defendant(s) a "[']meaningful opportunity to mount a defense,'" Díaz-Rivera v. Rivera-Rodríguez, 377 F.3d 119, 123 (1st Cir. 2004) (quoting Rodríguez v. Doral Mortgage Corp., 57 F.3d 1168, 1172 (1st Cir. 1995)).  See also Redondo-Borges v. U.S. Dept. of Housing and Urban Dev., 421 F.3d 1, 5 (1st Cir. 2005).  "In a civil rights action as in any other action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." Educadores Puertorriqueños en Acción v. Hernandez, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are

5

minimal . . .[,] 'minimal requirements are not tantamount to nonexistent requirements.'" Id. (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir. 1988)).

      A.      Failure to State Plausible Conspiracy Claims

Here, Darsch makes a bare allegation that the defendants conspired with each other to violate his constitutional rights; however, he fails to provide any underlying facts to support his claim of conspiracy, nor any facts from which a conspiracy among the defendants reasonably could be inferred.[3]  As the United States Supreme Court has stated, under Rule 8, a plaintiff must plead more than a mere allegation that the defendants have harmed him.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." quoting Twombly, 550 U.S. at 555).  See Chiang v. Skeirik, 582 F.3d 238, 244 (1st Cir. 2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.") (internal citation and quotation marks omitted).  At best, Darsch's allegations are only legal conclusions, or bald, threadbare, or speculative conclusions of conspiracy.  See Peñalbert–Rosa v. Fortuño-Burset, 631 F.3d 592, 595 (1st Cir. 2011) ("[S]ome allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross 'the line between the conclusory and the factual.'") quoting

---

[3]"A civil rights conspiracy as commonly defined is 'a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" Earle v. Benoit, 850 F.2d 836, 844 (1st Cir.1988) (internal quotations omitted)).  A general allegation of conspiracy to violate civil rights is not sufficient to meet the pleading requirement to assert cognizable claims of a conspiracy.  Rather, the allegations must set forth what part each defendant had in the alleged conspiracy, i.e., it must set forth the "who did what to whom and why."  Columbus v. Biggio, 76 F. Supp. 2d, 43, 52 (D. Mass. 1999).

Twombly, 550 U.S. at 557 n.5.

      B.      <u>Failure to State Plausible Claims Under 42 U.S.C. § 1983 Against Duncan</u>

As an additional matter, with respect to defense counsel Duncan, there are no facutal allegations that would set forth a cognizable civil rights claim against her because there is no indication that Duncan acted under color of state law. A claim under section 1983 of Title 42 (the vehicle for asserting federal constitutional violations) is limited to "person[s] who [act] under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Thus, to plead a viable §1983 claim, Darsch must allege conduct by a person acting under state law. See <u>Klunder v. Brown University</u>, 778 F.3d 24, 31 (1st Cir. 2015) <u>citing</u> <u>Estades–Negroni v. CPC Hosp. San Juan Capestrano</u>, 412 F.3d 1, 4 (1st Cir. 2005) (setting forth three-part test for state action).

Here, all that is asserted is that Duncan was appointed by the court to defend him. The fact that the court appointed his defense counsel is insufficient to make Duncan a state actor. "It is well settled that state appointed attorneys performing traditional functions as counsel do not act under color of state law within the meaning of 42 U.S.C. § 1983." <u>Dunker v. Bissonnette</u>, 154 F. Supp. 2d 95, 105 (D. Mass. 2001) (report and recommendation of Magistratet Judge Bowler adopted by District Judge Richard G. Stearns) (citing <u>Polk County v. Dodson</u>, 454 U.S. 312, 325 (1981), and <u>Harris v.Champion</u>, 51 F.3d 901, 909-10 (10th Cir. 1995)). See <u>Malachowski v. City of Keene</u>, 787 F.2d 704, 710 (1st Cir. 1986) ("A private attorney who is sued for actions allegedly taken as court-appointed counsel does not act under color of state law.") (citations omitted).

Indeed, "[e]ven when the defective performance of the state appointed attorney causes 'the trial process to deprive an accused person of his liberty in an unconstitutional manner, the lawyer who may be responsible for the unconstitutional state action does not himself act under

color of state law within the meaning of § 1983.'"  Dunker, 154 F. Supp. 2d at 105 (quoting Briscoe v. LaHue, 460 U.S. 325, 329 n.6 (1983)).

      C.      Failure to State Plausible Claims Under 42 U.S.C. § 1985

Darsch has asserted violations of 42 U.S.C. § 1985; however, he fails to state what subsection is applicable to this case.  Section 1985 "proscribes certain enumerated conspiracies" and confers a private right of action upon individuals injured by such conspiracies.  See Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).  Section 1985(1) prohibits a conspiracy by two or more persons to prevent, through force, intimidation, or threat, any officer of the United States from performing his or her duties.  42 U.S.C. § 1985(1).  Section 1985(2) prohibits a conspiracy by two or more persons to obstruct justice by force, intimidation or threats, any party or witness in any federal court.  42 U.S.C. § 1985(2).  Section 1985(3) prohibits a conspiracy by two or more persons to deprive persons of rights or privileges.  42 U.S.C. § 1985(3).

Subsections 1985(1) and (2) do not appear to be applicable to this case because there is no allegation of a conspiracy to prevent an official from performing his duties, nor is there any allegation of a conspiracy to intimidate a party or witness.  Thus, the Court presumes that Darsch's claims are intended to fall under § 1985(3).  To state a cause of action arising under § 1985(3), a plaintiff must allege the existence of a conspiratorial purpose to deprive a person or class of persons, directly or indirectly, of the equal protection of the laws or of equal privileges and immunities under the laws, by an overt act in furtherance of the conspiracy that causes an injury or deprivation of a constitutionally protected right or privilege.  Aulson, 83 F.3d at 3; see Petricca v. City of Gardner, 429 F. Supp. 2d 216, 222-23 (D. Mass. 2006).  Additionally, a claim of conspiracy must allege specific facts that suggest a conspiracy or agreement; conclusory statements that the defendants conspired are insufficient to meet the pleading standard.  See

Hudson v. MacEachern, No. 13-12395-LTS, 2015 WL 1442547, at *6 (D. Mass. Mar. 31, 2015).

Here, apart from a bald assertion that Green recommended a higher incarcerative sentence than others similarly situated, there is total absence of any factual allegations suggesting the requisite class-based animus in a section 1985 claim.  Moreover, as noted above, Darsch does not set out facts that would suggest a conspiracy or agreement.

> D. Failure to State Plausible Claims Against CPD and HCDAO

>> 1. Lack of *Respondeat Superior* Liability

Next, Darsch seeks to hold the CPD and the HCDAO liable based on the alleged wrongful actions of its employees (Lynch, Pronovost, and Green).  These claims are not plausible because they are based on a theory of *respondeat liability*, and such theory is not applicable to civil rights claims under 42 U.S.C. § 1983.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under Section 1983.  Velez-Rivera v. Agosto-Alicea, 437 F.3d 145, 156 (1st Cir. 2006) (quoting Cepero-Rivera v. Fagundo, 414 F.3d 124, 129 (1st Cir. 2005)).

>> 2. The Chicopee Police Department is Not a Suable Entity

As an additional matter, Darsch's claims against the CPD are not cognizable because the CPD is not a suable entity.  Here, the CPD is an agency of the Town of Chicopee; it is a non-person and consequently is not subject to suit.  See Johnson v. Rodriguez, 943 F.2d 104 (1st Cir. 1991) (state agency may not be sued for alleged civil rights violations).  See also Cronin v. Town of Amesbury, 895 F. Supp. 375 (D. Mass. 1995) (granting summary judgment in favor of town police department as not a proper defendant in 1983 action).  One reason for finding that a police department is not a suable entity is because if the police department is found liable, "it is the city [or town] which will pay; the result is the same as suing the city."  Henschel v. Worcester

Police Dep't, Worcester, Mass., 445 F.2d 624, 624 (1st Cir.1971) (brackets added). See Aldrich v. Town of Milton, 881 F. Supp. 2d 158, 165 (D. Mass. 2012); Douglas v. Boston Police Dep't, 2010 WL 2719970 (D. Mass. 2010) (dismissing suit against a municipal police department because department "has no legal existence or liability to suit separate from the [municipality]"). "Like a municipality, a police department 'cannot be held liable in damages under § 1983 merely because it employs a tortfeasor.'" Boyle v. Barnstable Police Dept., 818 F. Supp. 2d 284, 300 (D. Mass. 2011) quoting Malachowski v. City of Keene, 787 F.2d 704, 711 (1st Cir.1986); accord Lumpkin v. Lucey, 2010 WL 1794400, *2 (D. Mass. May 4, 2010) ("a municipal police department is not subject to suit under Section 1983"); Dwan v. City of Boston, 329 F.3d 275 (1st Cir. 2003).[4]

### 3. Sovereign Immunity Bars Damages Claims Against Green

Darsch's claims for monetary damages against the HCDAO are not cognizable because the HCDAO is a state agency and therefore entitled to Eleventh Amendment sovereign immunity. See Miller v. City of Boston, 297 F. Supp. 2d 361, 368-69 (D. Mass. 2003) (noting, *inter alia*, that: (1) a District Attorney's Office's main function is to appear for the Commonwealth in all criminal and civil matters; (2) the Attorney General has supervisory authority over the district attorneys; and (3) salaries and expenses of the district attorneys and their staff are paid by the Commonwealth). Under the Eleventh Amendment, actions filed in federal courts that seek damages against a state and its agencies are barred unless the state has consented to be sued in

---

[4] "A municipality cannot be held liable solely because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under § 1983 on a *respondeat superior* theory." Bordanaro v. McLeod, 871 F.2d 1151, 1155 (1st Cir. 1989) citing Monell v. New York City Dep't of Social Services, 436 U.S. 658 (discussing in what circumstances a municipality could be held liable under § 1983).

federal court." Boulais v. Commonwealth of Mass., 2002 WL 225936 at *1 (D. Mass. 2002) (citations omitted).[5]

Nothing in Darsch's allegations reasonably could be construed as presenting claims as to which the Commonwealth of Massachusetts has waived its sovereign immunity to suit in federal court.

### E.   Absolute Prosecutorial Immunity Bars Claims Against Green

In addition to the legal impediments discussed herein, Darsch's claims against Green are subject to dismissal because Green is entitled to absolute prosecutorial immunity, notwithstanding Darsch's to the contrary. It is well established that prosecutors are absolutely immune from suit arising out of their role as an advocate for the state or for conduct closely associated with the judicial phase of the criminal process. Van de Kamp, et al., v. Goldstein, 555 U.S. 335, 343 (2009); Buckley v. Fitzsimmons, 509 U.S. 259, 269-271 (1993); Burns v. Reed, 500 U.S. 478, 489-492 (1991); Imbler v. Pachtman, 424 U.S. 409, 427-428, 430-431 (1976).[6] Without such protection, "harassment by unfounded litigation would cause a deflection of the prosecutor's

---

[5]See Seminole Tribe of Florida v. Florida, 517 U.S. 44, 54 (1996); Kentucky v. Graham, 473 U.S. 159, 167 n.14 (1985) (unless a State has "waived its Eleventh Amendment immunity or Congress has overridden it,... a State cannot be sued directly in its own name regardless of the relief sought."); Alabama v. Pugh, 438 U.S. 781 (1978) (*per curiam*) (11th Amendment generally is recognized as a bar to suits against a State, its departments, and agencies unless the State has consented to suit); cf. Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989) (neither state nor its officials are "persons" for purposes of § 1983); Quern v. Jordan, 440 U.S. 332, 344 (1979) (Congress did not override state's Eleventh Amendment immunity in enacting §1983); Brown v. Newberger, 291 F.3d 89, 92 (1st Cir. 2002) ("[T]here has been no unequivocal abrogation of the Commonwealth's 11th Amendment immunity.").

[6]In Imbler, the plaintiff brought a civil rights action against the prosecutor on the grounds that he allowed a witness to give false testimony that let to the plaintiff's indictment. Id. at 421. The Supreme Court held that the state prosecutor was entitled to absolute immunity for initiation and pursuit of all stages of the prosecution. Id.; see Burns, 500 U.S. at 489-90.

energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." Burns, 500 U.S. at 485 (quoting Imbler v. Pachtman, 424 U.S. at 423).

Absolute prosecutorial immunity is not limited to conduct occurring in the courtroom. It includes actions where prosecutors are acting "in the course of [their] role as an advocate for the State," including "acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial . . . ." Buckley, 509 U.S. at 273. "Those acts must include the professional evaluation of the evidence assembled by the police and appropriate preparation for its presentation at trial or before a grand jury after a decision to seek an indictment has been made." Id. It may include obtaining evidence for the initiation of criminal process. Imbler, 424 U.S. at 431 n.33. Moreover, "[a]bsolute immunity is not defeated by a showing that the prosecutor acted wrongfully or even maliciously, so long as the prosecutor is exercising quasi-judicial power and not merely operating in an investigatory or administrative role." Easton v. Gianetti, 1997 WL 220312 (N.D. Cal. 1997) (citing Imbler, 424 U.S. at 427 and n.27); see Goldstein v. Galvin, 719 F.3d 16, 24 (1st Cir. 2013) ("The imperviousness of this protection is no accident: '[a]lthough this concept of absolute immunity allows some abuses of official power to go unredressed, it is necessary for the effective administration of government that government workers be able to perform their jobs without fear of liability.'" quoting Ricci v. Key Bancshares of Me., Inc., 768 F.2d 456, 462 (1st Cir.1985)).

In this case, the Court cannot infer any conduct by Green that would deprive him of the protections of the absolute immunity doctrine. Even if he made an improper sentence recommendation to the judge at the sentencing hearing, and even if he had made an improper decision to indict and prosecute notwithstanding Darsch's allegation of violations of Mass. Gen.

Laws ch. 263, § 1A, these actions would not undermine application of the doctrine.

    F.    <u>Claims Based on Violations of Mass. Gen. Laws ch. 263, § 1A; Claims Based on Violation of Federal Criminal Statutes</u>

Further, to the extent that Darsch basis his legal causes of action under Mass. Gen. Laws ch. 263, § 1A, or under 18 U.S.C. §§ 241 and 242, he fails to state plausible claims upon which relief may be granted. Nothing in the Massachusetts statute expressly or impliedly indicates an intention by the Legislature to confer a private right of action for violations of the statute. Rather, a fair reading indicates that the statute is intended simply to empower the police to fingerprint and photograph anyone who is taken into custody and charged with a felony. <u>See</u> <u>Comm. v. Shipps</u>, 399 Mass 820, 832 (Mass. 1987). In any event, Darsch has not submitted any legal authority for presuming a private cause of action exists.

Similarly, the federal criminal statutes involving conspiracy and deprivation of civil rights do not confer a private right of action. <u>See</u> <u>Bailey v. Bureau of Prisons</u>, 2015 WL 5694120 (D.D.C. Sept. 28, 2015) (18 U.S.C. §§ 241, 242 and others do not confer a private right of action) <u>citing</u> <u>Abou–Hussein v. Gates</u>, 2010 WL 2574084, at *1 (D.C. Cir. 2010) (*per curiam*) (affirming dismissal because 18 U.S.C. §§ 241 and 1001 "are criminal statutes that do not expressly create a private right of action"); <u>Keyter v. Bush</u>, 2005 WL 375623, at *1 (D.C. Cir. 2005) (*per curiam*) (affirming dismissal because 18 U.S.C. §§ 241, and 242, as criminal statutes, do not convey a private right of action), <u>cert.</u> <u>denied</u>, 546 U.S. 875 (2005) (other citations omitted).

    G.    <u>Failure to State Plausible Claims Under the Massachusetts Civil Rights Act</u>

Darsch asserts claims under the MCRA, Mass. Gen. Laws ch. 12, § 11I, the state analog to 42 U.S.C. § 1983. <u>See</u> <u>Martino v. Hogan</u>, 37 Mass. App. Ct. 710, 720-21 (1994). To state a claim under the MCRA, Darsch must allege facts plausibly suggesting that his exercise or

enjoyment of rights secured by the Constitution or laws of either the United States or of the Commonwealth has been interfered with, or attempted to be interfered with, and that the interference or attempted interference was by "threats, intimidation or coercion." Swanset Development Corp. v. Tauton, 423 Mass. 390, 395 (1996).  The Massachusetts Supreme Judicial Court has held that the MCRA was not intended to create a "vast constitutional tort," noting that "the legislature has explicitly limited this remedy to situations where the deprivation of secured rights occurs by 'threats, intimidation or coercion.'" Bell v. Mazza, 394 Mass. 176, 182 (1985). Here, however, Darsch has not alleged any facts or circumstances plausibly suggesting that threats, intimidation, or coercion existed in connection with the alleged wrongdoings by the defendants.

       H.      The Favorable Termination Rule of Heck Bars All Claims

Apart from the various legal impediments discussed herein, Darsch's claims are subject to dismissal because they are barred by the favorable termination rule.  In Heck v. Humphrey, 512 U.S. 477 (1994), the Supreme Court considered whether a state prisoner who was serving a sentence for voluntary manslaughter could bring a claim federal civil rights action in which he alleged that state prosecutors and the police had violated his rights under the United States Constitution by engaging in an unlawful investigation leading to the plaintiff's arrest, knowingly destroying exculpatory evidence, and causing an unlawful voice identification procedure to be used at trial.  See id. at 479.  The Court recognized that, although the plaintiff did not seek release or any other injunctive relief, see id., the plaintiff's lawsuit was a challenge to the validity of an outstanding criminal judgment, see id. at 486.  Drawing upon the common law tort principle that an action for malicious prosecution cannot be maintained unless the prior criminal proceeding was terminated in favor of the accused, the Court held that "in order to recover

damages for allegedly unconstitutional conviction or imprisonment . . . a [federal civil rights] plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." Id. at 486-87. This rule applies not only where the plaintiff expressly states that his conviction or sentence is invalid, but wherever "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." Id. at 487.

Here, the "favorable termination" rule of Heck bars this action because Darsch seeks damages based on an alleged wrongful conviction, and because he expressly challenges the validity of his conviction by seeking a declaratory judgment that his conviction is void.

For all the reasons noted above, Darsch's claims are subject to dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and (ii) and 28 U.S.C. § 1915A. The Court will not make a final determination at this time, but will afford Darsch an opportunity to demonstrate good cause why these claims should not be dismissed, as set forth below.

   I.  Declination to Exercise Supplemental Jurisdiction

In the event Darsch's federal claims ultimately are dismissed for the reasons stated herein, this Court would decline to exercise jurisdiction over his pending state-law claims.

Under 28 U.S.C. § 1367, a "district court may decline to exercise supplemental jurisdiction" if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). See Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177 (1st Cir. 1995) ("As a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit, well before the commencement of trial, will trigger the dismissal without prejudice of any supplemental state-law claims.").

Here, the MCRA state-law claim is subject to dismissal on the merits, but this Court would decline to exercise Darsch's legal malpractice claim (also a state-law claim) against Duncan and would dismiss that claim without prejudice.

IV.     Order to Show Cause

In light of all of the above, this action will be dismissed within 42 days of the date of this Memorandum and Order unless Darsch files a written a "Show Cause Response" demonstrating good cause why this action should not be dismissed based on the various legal impediments discussed herein (*i.e.,* the failure to state plausible conspiracy claims under Rule 8, failure to state plausible claims under §§ 1983, 1985, and the MCRA, the lack of state action by Duncan, the lack of *respondeat superior* liability of the CPD and HCDAO, the fact that the CPD is not a suable entity, the bar of sovereign immunity as to HCDAO from damages, absolute prosecutorial immunity bars claims against Green, the lack of a private right of action under Mass. Gen. Laws ch. 263, § 1A and 18 U.S.C. §§ 241 and 242, and the bar of the favorable termination rule of Heck).

Failure to comply with the directives contained in this Memorandum and Order may result in a dismissal of this action and may constitute a strike pursuant to 28 U.S.C. § 1915(g).

No summonses shall issue pending further Order of the Court.

V.      The Motion For Appointment of Counsel

In his Motion for Appointment of Counsel, Darsch seeks appointment of counsel to assist him in discovery and all stages of this case because he is an indigent prisoner and without legal knowledge. He contends that he had an inmate law clerk prepare his Complaint but that inmate is no longer available to assist him.

Under 28 U.S.C. § 1915(e)(1), the court "may request an attorney to represent any person

unable to afford counsel." 28 U.S.C. § 1915(e)(1).  A civil plaintiff, however, does not have a constitutional right to free counsel.  DesRosiers v. Moran, 949 F.2d 15, 23 (1st Cir. 1991).  In order to qualify for appointment of counsel, a party must be indigent and exceptional circumstances must exist such that denial of counsel will result in fundamental unfairness impinging on the party's due process rights.  Id.  To determine whether exceptional circumstances sufficient to warrant the appointment of counsel are present in a case, the court must examine the total situation, focusing on the merits of the case, the complexity of the legal issues, and the litigant's ability to represent him or herself.  Id. at 24.

At this juncture, this Court cannot find that exceptional circumstances exist that would warrant appointment of *pro bono* counsel in this case, particularly where he does not raise novel or complex issues, his lack of funds and legal skills is not unique in prisoner litigation, and because this action is subject to dismissal in its entirety for the various reasons set forth herein.

Accordingly, Darsch's Motion for Appointment of Counsel (Docket No. 5) is DENIED.

## CONCLUSION

Based on the foregoing, it is hereby Ordered that:

1. Plaintiff's Motion for Leave to Proceed *in forma pauperis* (Docket No. 7) is ALLOWED and the filing fee is assessed pursuant to 28 U.S.C. § 1915(b);

2. Within 42 days of the date of this Memorandum and Order, plaintiff shall demonstrate good cause in writing why this action should not be dismissed for the reasons stated herein; and

3. Plaintiff's Motion for Appointment of Counsel (Docket No. 5) is DENIED.

SO ORDERED.

/s/ William G. Young
WILLIAM G. YOUNG
UNITED STATES DISTRICT JUDGE

DATED:  January 13, 2016